UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TOMLINSON BLACK NORTH IDAHO INC., an Idaho Corporation. <br><br>        Plaintiff, <br><br> vs. <br><br> GERALDINE KIRK-HUGHES, an individual, d/b/a Kirk Hughes and Associates; KIRK-HUGHES, LLC, a Nevada limited liability company; KIRK-HUGHES DEVELOPMENT, LLC, a Delaware limited liability company; KELLY POLATIS, an individual; and DOES 1 through 10, <br><br>        Defendants. | Case No. CIV 06-118-N-EJL <br><br> MEMORANDUM ORDER |

Pending before the Court in the above-entitled matter is Defendants' motion for summary judgment (Docket No. 46).  Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record.  Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.

Standard of Review

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure.  Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence

MEMORANDUM ORDER- 1

of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial. See, Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986).  If the non-moving party fails to make such a showing on any essential element, "there can be no `genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.[1]

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine."  An issue is "material" if it affects the outcome of the litigation.  An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial."  Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975) (quoting First Nat'l Bank v. Cities Serv. Co. Inc., 391 U.S. 253, 289 (1968)). The Ninth Circuit cases are in accord.  See, e.g., British Motor Car Distrib. v. San Francisco Automotive Indus. Welfare Fund, 882 F.2d 371 (9th Cir. 1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

---

[1] See also, Rule 56(e) which provides, in part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Id. at 374 (citation omitted).

Of course, when applying the above standard, the court must view all of the evidence in a light most favorable to the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Hughes v. United States, 953 F.2d 531, 541 (9th Cir. 1992).

Factual Background

This case involves a real estate commission dispute.  In May 2004, Dean Anderson ("Anderson"), a real estate agent with Tomlinson Black North Idaho, Inc. ("Tomlinson"), was contacted by Darlene Moore ("Moore") and Geraldine Kirk-Hughes ("Kirk-Hughes") about assisting them with finding some lake front property for development.  On May 8, 2004, Anderson took Moore and Kirk-Hughes to view a certain parcel of real property which will be referred to as the Peterson property.  Kirk-Hughes instructed Anderson to write an offer to purchase the Peterson property for $6 million.  Pacific Real Estate & Investment was the listing agency for the Peterson property as well as the Sloan property and the Atkinson property which were located next to the Peterson property.  Alan Golub ("Golub") was the listing agent for Pacific Real Estate & Investment.

It is undisputed that Kirk-Hughes bought the Atkinson property after Golub assigned his interest in purchasing the property to Kirk-Hughes.  On May 8, 2004 Kirk-Hughes signed a Purchase and Sale Agreement to purchase a parcel contiguous to the Peterson property known as the Sloan property.  Kirk-Hughes did in fact purchase the Sloan property.

On May 8, 2004, Anderson maintains that Kirk Hughes did not have a checkbook to write the earnest money deposit for the Peterson property, so it was agreed the purchase offer would name Moore and/or assign as buyer and Moore would write the earnest money check. The closing date on the offer to purchase was June 1, 2004.  The Petersons countered the offer and the counteroffer was accepted by Moore on May 12, 2004.  Exhibit B of the Complaint.  At

MEMORANDUM ORDER- 3

some point, the earnest money check from Moore did not clear the bank.  However, this did not cause the seller to terminate the transaction.

Also on May 8, 20004, Tomlinson entered into Exclusive Buyer Representation Agreements with both Moore and Kirk-Hughes and/or Assign.  Exhibits C and D to Complaint. The term such agreement states:

> Term of Agreement: This EXCLUSIVE BUYER REPRESENTATION AGREEMENT (herein referred to as Agreement) is in force from 5-8-04 and will expire on date 7-8-04, or upon closing of escrow of such property purchased through this agreement.

This agreement also set forth the commission for property subject to a listing agreement at 7% . Also on May 8, 2004, the listing broker agreed to pay Anderson and Tomlinson 3.5% of the selling price on the Peterson property sale.  Exhibit E to Complaint.

Addendum #2 to the sales agreement was executed by Kirk-Hughes on June 8, 2004 extending the closing date to July 30, 2004 to allow for additional due diligence by the buyer. Exhibit F to the Complaint.  On July 28, 2004, Moore executed an Assignment of her interest in the Peterson property purchase to "Kirk Hughes & Ass."  Exhibit G to the Complaint.

On August 6, 2004, Geraldine Kirk-Hughes and Associates entered a second Real Estate Purchase and Sale Agreement And Receipt for Earnest Money for the Peterson property. The purchase price was reduced to $5,482,000 and the closing date was specified as August 31, 2004.  Exhibit H to the Complaint.  Anderson was the still listed as the buyer's agent for this purchase agreement.  The seller was still represented by Pacific Real Estate & Investment. Plaintiff claims the new contract was written just to clean things up based on the appraisal coming in lower than the original agreed upon price of $6 million.  Kirk-Hughes disputes this reason and argues that she entered a new contract as she was buying the property not Moore (even though Moore had already assigned her interest in the first Purchase and Sale Agreement

MEMORANDUM ORDER- 4

to Kirk-Hughes).  The real property included in this second Purchase and Sale Agreement was the same piece of real property, the Peterson property.

On September 3, 2004, another addendum was executed extending the closing date to September 30, 2004.  Exhibit I to the Complaint.  On or about September 26, 2004, Kelly Polatis ("Polatis"), who was introduced to Anderson as the project manager of Kirk-Hughes, visited the Petersons in Huntsville, Alabama to discuss an further extension of the closing date.  On September 28, 2004, Kirk-Hughes signed an another addendum moving the closing date to November 12, 2004.  Exhibit J to the Complaint.

During his visit with the Petersons, Polatis discovered the commission agreement the Petersons had with Pacific Real Estate & Investment was not for a flat 8% commission but a commission equal to 50% of any sale amount over $4.4 million.  Exhibit E to Jovick Affidavit (Docket No. 47).  Kirk-Hughes was made aware of the commission structure via Polatis and became upset with Tomlinson as she had been told the commission was 8% with 7% being split between Pacific Real Estate and Tomlinson and 1% going to Moore as a referral.  Kirk-Hughes stopped communicating with Tomlinson and the escrow company.  The transaction did not close on or before November 12, 2004.

On March 7, 2005, the Peterson property was conveyed via a warranty deed from the Petersons to Polatis and the deed was recorded on March 11, 2005.  The address for Polatis is the office address for Kirk-Hughes.  Exhibit K to the Complaint.  Polatis financed at least part of the purchase with a promissory note in the amount of $4,850,000 which was secured by a mortgage on the Peterson property and recorded March 11, 2005.  Exhibit J to the Complaint.  The real property was conveyed by Polatis to Kirk-Hughes Development, LLC by a warranty deed dated March 11, 2005.  Exhibit M to the Complaint.  The address on the warranty deed and mortgage for Polatis is 2552 S. Ft. Apache Road, #103, Las Vegas, Nevada, 89117 which

MEMORANDUM ORDER- 5

has been determined to be Kirk-Hughes' business address.

No commissions were paid to Tomlinson as a result of the Peterson property being sold to Polatis and conveyed to Kirk-Hughes Development, LLC. Plaintiff filed the Complaint in state court and the matter was removed to federal court. Plaintiff alleges eight causes of action: 1) breach of contract; 2) breach of covenant of good faith and fair dealing; 3) conspiracy to defraud Plaintiff's commission; 4) tortious interference with contract; 5) tortious interference with Exclusive Buyer Representation Agreement; 6) tortious interference with business expectancy and business relationship; 7) unjust enrichment; and 8) quantum meruit. Defendants Geraldine Kirk-Hughes, Kirk-Hughes, LLC, and Kirk Hughes Development, LLC (collectively referred to as "Defendants Kirk-Hughes") filed their motion for summary judgment claiming there was not breach of the Exclusive Buyer Representation Agreement since it had expired on July 8, 2004 and Kirk-Hughes did not breach the purchase contract by failing to close on the property on November 12, 2004. Therefore, Defendants Kirk-Hughes argue it could not have interfered with the commission agreement between Plaintiff and Pacific Real Estate & Investment and the case should be dismissed.

Analysis

Defendants Kirk-Hughes begin with the proposition that this is a simple breach of contract case and that by being successful on the motion for summary judgment on the breach of contract and tortious interference claims, all other claims should also be dismissed. Plaintiff disagrees that the claims are limited to breach of contract and tortious interference and argues that since only the breach of contract and tortious interference claims have been raised in the motion filed by Defendants Kirk-Hughes, all other claims survive summary judgment. Since the Court finds summary judgment is not appropriate on the breach of contract or tortious

interference with contract claims, the Court need not address Defendants argument that the other claims are dismissed as well.  The Court will address each of Defendants arguments set forth in their motion for summary judgment.

       1.    <u>Exclusive Buyer Representation Agreement ("EBRA")</u>

Kirk-Hughes first claims the EBRA expired by its own terms on July 8, 2004 so there can be no breach.  Specifically, since Kirk-Hughes did not sign a Purchase and Sale Agreement on the Peterson property until August 6, 2004, the EBRA had already expired and there can be no liability for breach of contract.  Plaintiff argues the EBRA had not expired as it was the second portion of the termination clause that extended the EBRA until the Peterson property closing date.

Idaho Code § 54-2050 requires that buyer representation agreements have "conspicuous and definite beginning and expiration dates" and there cannot be automatic renewal clauses. The Court finds the EBRA executed in this case complies with the statute as the expiration date is either a date certain or the date the property the buyer is being represented on closes, which ever is later.  Defendants argument does not take into account that Moore assigned all of her purchase rights (and obligations under Moore's EBRA) to Kirk-Hughes regarding the purchase of the Peterson property.  Kirk-Hughes was shown the Peterson property by Anderson in May when she allegedly directed Moore to complete the offer on her behalf regarding the Peterson property.  Therefore, either Moore's EBRA or the EBRA executed by Kirk-Hughes when she viewed the Peterson property with Anderson, extended the term of the EBRA to the closing date on the Peterson property.

Second, Kirk-Hughes argues the EBRA expired when the closing did not occur on the first Purchase and Sale Agreement which was assigned to Kirk-Hughes by Moore.  Anderson claims the new purchase agreement was executed to clean things up and that the ERBA's

MEMORANDUM ORDER- 7

signed by both Moore and Kirk-Hughes regarding the Peterson property remained in effect until the closing on the Peterson property.  In viewing the facts in a light favorable to the non-moving party, there are genuine issues of material fact regarding whether or not the EBRA was terminated by the parties when the first Purchase and Sale Agreement did not close.  It seems more likely to the Court that the EBRA did not expire on July 8, 2004 because the second portion of the termination clause in the EBRA came into play which states the EBRA terminates "upon closing of escrow of such property purchased through this agreement."  "Such property purchased through this agreement" appears to be broad enough to cover the Peterson property that Kirk-Hughes looked at in May when she had Moore sign the Purchase and Sale Agreement because she did not have her checkbook for the earnest money and then filled out a second Purchase and Sale Agreement in August on the exact same property based on the appraisal that was completed as a result of the first Purchase and Sale Agreement.  When the first and second Purchase and Sale Agreements are examined, one can see that the appraisal fee which was the buyer's expense in the first agreement was dropped not applicable when the second Purchase and Sale Agreement was executed by Kirk-Hughes and this is consistent with Plaintiff's factual argument that the second agreement was done simply to clean things up.  A jury will have to determine whether it was Kirk-Hughes and Anderson's "agreement" that no EBRA was in effect when she signed the Purchase and Sale Agreement on August 6, 2004 or that the existing EBRA either signed by Moore or Kirk-Hughes would continue in effect for the Peterson property purchase.

Defendants also argue that the EBRA did not automatically renew for every property that the buyer's agent may have shown Kirk-Hughes during the time frame of the EBRA.  The EBRA at issue does not have an automatic renewal clause.  However, the termination clause contained in the EBRA allows the expiration of the EBRA to be tied to the closing on the

property the buyer made an offer on during the term of the agreement. The record establishes that Kirk-Hughes is a sophisticated buyer and it seems disingenuous for Kirk-Hughes to argue that no commission was due to Tomlinson on the Peterson property (if it closed) when she signed the Purchase and Sale Agreement in August even though the agreement was for the same property Anderson had been working with Kirk-Hughes on since May.   There are disputed issues of fact regarding why a second Purchase and Sale Agreement was signed in August by Kirk-Hughes for the Peterson property.   This determination by a jury is critical in determining whether the EBRAs executed by Moore and Kirk-Hughes continued in effect for the second Purchase and Sale Agreement.

Defendants also argue that Moore was not an agent of Kirk-Hughes, so the Moore EBRA cannot be used to bind Kirk-Hughes as any assignment was after expiration of the EBRA and the sale related to the first Purchase and Sale Agreement for the Peterson property never closed so there was no duty to pay a commission.   While Defendants claim Moore was not an agent and any assignment agreement lacked consideration, the Court finds those disputed issues need to be decided by a jury.   Plaintiff has set forth sufficient facts to put at issue whether Moore was acting as Kirk-Hughes' agent or representative when she signed the first Purchase and Sale Agreement in May of 2004.   Moreover, the facts taken in a light most favorable to the non-moving party could support a finding that the second Purchase and Sale Agreement was simply to "clean things up" and allow the Peterson property (which was subject to the Moore EBRA and such obligations had been assigned to Kirk-Hughes) time to close at the reduced price based on the appraisal.    Whether or not Moore was acting with express, implied or apparent authority on behalf of Kirk-Hughes is another disputed fact that will have to be resolved by the jury.

MEMORANDUM ORDER- 9

Because genuine issues of material fact exist as to this the alleged breach of the EBRA, summary judgment based on the EBRA must be denied.

    2.    <u>Interference with commission agreement between Tomlinson and Pacific Real Estate</u>

Defendants claim that a commission was only due if the property closed and since the Peterson property transaction under either the first or second Purchase and Sale Agreement never closed, no commission was ever due and there could be no interference between the listing broker and the buyer's broker's agreement to pay a commission.  Plaintiff claims Defendants interfered with the agreed upon commission agreement for 3.5% of the sales price to be paid to Tomlinson (Exhibit E to the Complaint) when the Peterson property was conveyed to Polatis as Kirk-Hughes agent since Kirk-Hughes had Polatis engaging in negotiations with the Petersons when the EBRA was still in effect for the Peterson property.

A prima facie case for tortious interference with contract requires the plaintiff to prove that it was a party to the contract, the defendant knew of the contract, the defendant intentionally interfered with the contract causing a breach, that plaintiff was damaged as a proximate cause of the defendant's interference and the nature and extent of plaintiff's damages.  <u>Barlow v. International Harvester Co.</u>, 522 P.2d 1102, 1114 (Idaho 1974); <u>Magic Valley Truck Brokers, Inc. v. Meyer</u>, 982 P.2d 945, 950 (Idaho Ct. App. 1999).  "Malice in the sense of ill-will is not required."  <u>Long v. Newby</u>, 488 P.2d 719, 722 (Alaska 1971) (cited by <u>Barlow</u> at 1114).  After a prima facie case is established, the burden shifts to the defendant to prove justification.  <u>Barlow</u> at 1114.

In viewing the facts in favor of Plaintiff, the Court finds the Plaintiff could establish a prima facie case for interference with a contract.  While Kirk-Hughes may not have been aware

MEMORANDUM ORDER- 10

of the handwritten contract regarding Tomlinson's 3.5% commission, the EBRA that Moore and Kirk-Hughes signed expressly sets forth that the buyer would be paying a 7% commission to the two brokers involved.  Kirk-Hughes is an attorney and knows how to read a contract. Tomlinson need not be a party to the Peterson and Pacific Real Estate & Investment commission agreement (Exhibit E to Jovick Affidavit, Docket No. 47) for Kirk-Hughes to have interfered with Tomlinson and Pacific Real Estate & Investment's commission agreement (Exhibit E to Complaint, Docket No. 1).  When Kirk-Hughes decided not to close on the Peterson property based on the second Purchase and Sale Agreement and instead to have her project manager negotiate directly with the seller to allegedly avoid paying any commissions, this could be viewed as intentional interference with the commission contract causing a breach and Plaintiff claims it  damaged in the amount of the lost commission as a proximate cause of the Kirk-Hughes interference.  Disputed issues exist regarding Kirk-Hughes failure to close in November of 2004.  While Kirk-Hughes should have the opportunity to present her justification for not closing in November and for having Polatis effectuate a purchase directly with the Petersons that was shortly thereafter assigned to her and included her address on the warranty deed and mortgage securing the purchase by Polatis, these genuine issues of material fact prohibit summary judgment from being entered in Defendants favor on the interference with a contract claim.

ORDER

Being fully advised in the premises, the Court hereby orders that Defendants' motion for summary judgment (Docket No. 46) is DENIED.

MEMORANDUM ORDER- 11

A **court trial** shall begin on **May 5, 2008, at 1:30 p.m.** in the Federal Courthouse in **Coeur d'Alene**, Idaho.[2]  A continuance for reason will be granted only upon a showing of extraordinary circumstances.

Suggested  Findings of Fact and Conclusions of Law are to be submitted at least fourteen (14) days before trial.  Attach an index directing the Court's attention to the evidence that will support the proposed findings or conclusions of law.  A stipulation on all non-contested issues should accompany these documents.

Motions in limine, if any, shall be filed thirty (30) days prior to trial.  Response to motions in limine, if any, shall be filed within fourteen (14) days from the filing of the motion.

The Court, upon a review of the pending motions, will determine whether a hearing is necessary.  For any pre-trial motions filed prior to the deadlines set forth in this Order, the responsive briefing due date shall be those set forth in Local Rule 7.1.

Witness lists shall be filed fourteen (14) days prior to trial, unless otherwise ordered or agreed upon.  Witness lists shall contain the material listed in Fed. R. Civ. P. 26(a)(3)(A)&(B), and shall include a brief description of  the subject matter of the witnesses' expected testimony.

The exhibit lists shall follow the guidelines set out in Local Rule 16.3.  Plaintiff's Exhibits should be numbered and listed starting with "1."  Defendant shall contact Ms. Anne Lawron, Courtroom Deputy at 208-334-9022, to receive their exhibit numbers.  If either side has  multiple parties or numerous exhibits, contact Ms. Lawron for number assignments.  Each exhibit should be labeled with a color-coded sticker. (Yellow for plaintiff; blue for defendant.  Stickers are available at the Clerk's Office, US courthouse.)  The number of the exhibit and number of the case should be on all exhibits.  A set of originally marked exhibits and a copy of the exhibit list shall be delivered

---

[2]The parties are further advised that criminal matters may also be set on that date, which would  supersede all civil settings; however, civil matters would commence in the order set at the conclusion of any criminal proceedings, if time allows.

to Ms. Lawron on the day of trial.  Two complete sets of exhibit copies and exhibit lists should be submitted for use of the Court and staff attorney and a copy should also be delivered to opposing counsel.  Impeachment exhibits will be marked, sealed and delivered only to the Court.  Except for good cause shown, no exhibits or testimony will be received in evidence at trial unless presented in accordance with this order.

Trial briefs shall be exchanged between the parties and submitted  to the Court within fourteen (14) days prior to trial.  The Court is to be advised and briefed on all anticipated evidentiary problems _before_ trial; no motions will be heard on the morning of a trial unless approved by the court in advance.

**SO ORDERED**.

DATED:  **March 24, 2008**

Honorable Edward J. Lodge
U. S. District Judge